NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
ARKADIY TERPUNOV,

                    Plaintiff,

       -against-

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,

                   Defendant.
-------------------------------------------------------------------X

Plaintiff Designates New York
County as the Place of Trial

**Date Purchased:** July 29, 2019

**INDEX NO.:** 157413/2019

**SUMMONS**

The Basis of Venue is Defendant's
Principal Place of Business

To the above named Defendant:

      You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons to serve a notice of appearance on the Plaintiffs' attorney within twenty days after service of the summons exclusive of the day of the service, where service is made by delivery upon you personally within the state, or within 20 days after completion of service where service is made in any other manner.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      July 29, 2019

Defendant's Address:
New York City Health and Hospitals Corp.
55 Water Street
New York, NY 10041

STEWART LEE KARLIN
LAW GROUP, P.C.

  _s/ Stewart Lee Karlin_____
STEWART LEE KARLIN, ESQ.
DANIEL E. DUGAN, ESQ.
111 John St., 22nd Floor
New York, New York 10038
(212) 792-9670
Dan@stewartkarlin.com

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

ARKADIY TERPUNOV,

                Plaintiff,

    -against-

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,

              Defendant.
-----------------------------------------------------------------X

**VERIFIED COMPLAINT**

**INDEX NO.:** 157413/2019

Plaintiff, ARKADIY TERPUNOV, by his attorneys, STEWART LEE KARLIN LAW GROUP,

PC, for his complaint herein alleges as follows:

## PARTIES

1.    Plaintiff, ARKADIY TERPUNOV,(hereinafter at all times mentioned "Plaintiff") is a male
and was an employee of the Defendant NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION. Plaintiff is an employee within the meaning of the New York City
Administrative Code, New York State Executive Law 291 et. seq. and Title VII of the Civil
Right Act of 1964 as amended.

2.    At all times hereinafter mentioned, Defendant NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION (hereinafter "Defendant") is a public healthcare system
created by the New York State Legislature on July 1, 1970 to operate New York City's
municipal hospitals. Defendant operates eleven acute care hospitals, six neighborhood
family health centers, four long-term care facilities, a certified home healthcare agency and
more than 100 community health clinics.

3.    Defendant is an employer within the meaning of the New York City Administrative Code,

NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 07/29/2019

New York State Executive Law 291 et. seq. and Title VII of the Civil Right Act of 1964 as amended.

## SUMMARY OF THE CASE

4.    This is an employment discrimination action pursuant to the New York City Human Rights Law, New York State Human Rights Law and Title VII. Plaintiff was subjected to a hostile work environment due to sexual harassment and quid pro quo sexual harassment as he was terminated following his refusal of his supervisor Marietta Rozental's sexual advances. Plaintiff was also retaliated against for his repeated complaints of sexual harassment. Plaintiff was also subject to religious discrimination in that he was disciplined for not working on site on select Sundays, despite requesting to work from home due to religious observance.

## FACTUAL ALLEGATIONS

5.    Plaintiff commenced his employment with the Defendant on or about May 9, 2016 as a Group 12(unionized) employee with the title of Clinical Business Analyst Level 2, Patient Care System, assigned to Defendant's Enterprise Information Technology Services Department. ("EITS").

6.    Plaintiff was never given Tasks & Standards and never received any performance evaluations.    At all times Plaintiff performed his duties in an exemplary manner. Throughout the course of his employment Plaintiff received only positive feedback from business users. (Dozens of this feedback)

7.    Plaintiff was employed at Defendant's location at 55 Water Street, New York, New York 10041.

2

8. Plaintiff's immediate supervisor for the entirety of his employment was Marietta Rozental. Rozental, Senior Director, Clinical Information Systems, and assigned to EITS. Rozental also was employed at Defendant's location at 55 Water Street, New York, New York 10041. Upon information and belief Rozental is still employed in the same position with Defendant.

9. On December 16th 2016, Plaintiff took part in a work holiday party which occurred at a Russian restaurant and was organized by Rozental. During this party, Rozental invited Plaintiff to dance with her. While dancing, she improperly touched him and complimented him on how he smelled. Specifically, at approximately 10 pm, Rozental invited Plaintiff to dance. The two entered the dance floor mid-song and danced for about two minutes. While dancing, Rozental started moving towards Plaintiff, getting uncomfortably close to him. She then put her face on his right shoulder/neck area and stayed in that position for about ten seconds. She then said to Plaintiff, "You smell nice". Plaintiff said nothing in response and they continued dancing for approximately twenty seconds until the song ended at which time Plaintiff returned to his seat. At approximately midnight, Plaintiff said he was going to be leaving. Rozental then insisted that her brother give Plaintiff a ride home, even though Plaintiff lived just four subway stops from the venue.

10. The following week, in December 2016, during a party for the EITS Department, Rozental asked Plaintiff what his relationship status was.

11. As a result of these two encounters, Plaintiff felt very uncomfortable participating in any further out of office social gatherings with Rozental.

12. In May 2017, Mira Matveev, Rozental's close friend and her direct report, invited Plaintiff

3

NYSCEF DOC. NO. 1                                             RECEIVED NYSCEF: 07/29/2019

to join a birthday celebration party for Rozental at a Russian Restaurant over the weekend. Attendance would include chipping in for food, drinks and a birthday present. Plaintiff declined that invitation.

13.   In mid-May 2017, Rozental invited Plaintiff to attend with her a public event in Brooklyn, sponsored by her non-profit organization. Specifically, on or about May 12, 2017, Rozental forwarded Plaintiff an invitation to attend a public event called, "Heritage of the Caucasus, on May 21, 2017 at 1 pm. Plaintiff responded that he would attend the event, but with his mother. Rozental looked disappointed upon hearing the news. On Monday morning, May 22, 2017, the day after the event, Rozental called Plaintiff into her office to speak to him. During the ten-minute conversation, she specifically said, "I am disappointed you came with your mother... I have a reach social life...I want you to come alone next time ...it will be fun for you and me to hang out together." During this conversation, Rozental made it clear that she was a single woman and also stated that she would cover all expenses for Plaintiff so there was nothing for him to worry about. Plaintiff responded, "I am not comfortable with this," ending the conversation and he went back to his seat. Following this uncomfortable interaction, Plaintiff decided not to attend a birthday cake party for Rozental, organized by Mira/Irina in the office

14.   Due to Plaintiff's rejections of Rozental and his absence from her birthday celebration, which upset her, she started to act in a demeaning and unfair way to Plaintiff at work. Rozental engaged in verbal abuse, unjustified criticism and blame towards Plaintiff with these daily occurrences being done mostly in public in order to embarrass and humiliate Plaintiff in front of his colleagues. Additionally, Rozental began to purposefully ignore

4

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

Plaintiff's work contributions and subjected him to excessive micro-management compared to the other employees she supervised.

15.     On June 29th, 2017, Rozental, with Mira's help, accused Plaintiff of not being a "team player," without providing any evidence or explanation. She cited anonymous sources as justification for her claim and never replied to Plaintiff's request to meet in person to investigate and resolve the issue.

16.     In the next few months, Rozental used every opportunity to diminish Plaintiff's professional value and self-esteem, often done via email, publicly (i.e. with other employees included on the emails).  Rozental also humiliated Plaintiff personally, in front of his co-workers, by saying he was incapable of finding himself a wife.  In mid-July 2017, Rozental said to Plaintiff, "You worked at Coney Go-Live for two weeks, but could not meet a Russian woman there."  Rozental also made inappropriate comments regarding Plaintiff having never been married and his belief that he would only start a relationship that leads to having a family and children by stating, "No woman would want to have kids with you."

17.     Rozental also exhibited unwarranted personal expectations on Plaintiff, which she did not do to other employees, including expecting him to open and close car doors for her, and if Plaintiff did not she would overreact in a very emotional manner. Rozental specifically complained to Plaintiff that he was not giving her the attention she deserved as a woman. On one occasion Rozental asked Plaintiff if the bracelet she was wearing on her ankle looked good on her.  Plaintiff replied, "I never noticed you had one," and in response Rozental exclaimed, "I don't know what a woman has to do to get noticed by a man."

5

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/29/2019

18.  Plaintiff again asked Rozental to stop this undesirable activity several times in the summer 2017.

19.  During September and October 2017 Plaintiff started noticing subtle signs of attention from Rozental again

20.  On Friday, 10/27/17, Rozental started a conference call with a Vendor in her office. While Rozental, Morad and Plaintiff were waiting for others to join the call, Rozental was talking (on speaker) with Jennifer, the vendor's Project Manager.  Rozental mentioned that she had heard about a recent research study that showed people who smoked marijuana had sexual intercourse more often.  Rozental then put the phone on mute and said to Plaintiff in Russian, "We should try something like this."

21.  Rozental initiated two personal conversations with him on November 9 and 20, 2017. She asked/talked about Plaintiff's recent dating experiences, what he was looking for in women and finally gave him advice that he should look into dating an older woman. (Rozental is older than Plaintiff). On both occasions Plaintiff tried to end the conversation and go back to his seat as soon as possible. During the conversation on November 9 Rozental asked Plaintiff what type of women he was attracted to physically. Plaintiff responded, "What's important is what is on the inside." She responded, every man says that, but looks at a woman's body. Rozental continued, "Women too look at men's butts, but I like the front better," as she looked at Plaintiff's groin area. After Plaintiff left her office she came to his desk less than thirty second later and asked him to get back to her office to continue the chat. After he returned to her office, she started to speak about personal topics again, forcing Plaintiff to leave a second time. On November 20, a similar conversation occurred,

6

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

during which Rozental advised Plaintiff to date an older woman.

22.   On November 21, 2017 Rozental sent Plaintiff a sexually explicit message inviting him to come to her place of residence over the week-end and spend time with her. Plaintiff did not respond to that email and he avoided any personal contact with her following that incident.

23.   On Sunday, December 3rd, 2017 at a pre Go-Live at a Queens Dental office, Plaintiff chose a workstation located in the front office, away from Rozental who sat with the rest of the team members in the large conference room in the back. At around 2.30 pm, Rozental came to Plaintiff's desk and asked him how long he was going to stay in the office. She then said, "Everyone left... I am leaving now... I can give you a ride home... We could stop by my place for a cup of tea." Plaintiff rejected that offer. He said, "I am sorry, I cannot do it. Please don't ask that me again."When she started saying something in response, Plaintiff said, "The conversation is over," and he turned away from her to face his workstation. Plaintiff was very upset and didn't face Rozental until she walked away moments later. He stayed in the office for another five or six minutes. He then walked out towards the bus stop (another few minutes) away. While waiting for the bus to arrive, he saw Rozental driving by in her red car and he looked away.

24.   Plaintiff continued to feel uncomfortable being with Rozental one-on-one and made sure that during any of their interactions there was somebody else present, particularly if he had to enter her office. Plaintiff kept his personal verbal communication with her to a minimum.

25.   In the first week of December 2017, at a Queens/Elmhurst Go-Live, Plaintiff was verbally

NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 07/29/2019

attacked by Rozental constantly.  On December 7, 2017 during an email exchange with Rozental, Plaintiff clearly stated that he was only interested in a professional relationship with her and that he wanted to be treated fairly, just like everyone else on the team that Rozental supervised.  Rozental did not respond to that email.

26.  Rozental continued her harassment of Plaintiff by using his co-workers to take group action against him, continually subjecting him to unjustified criticism and blame, and by making false statements regarding Plaintiff to upper management.

27.  Plaintiff stopped taking car services rides with Rozental and Morad beginning the first week of December 2017 to avoid any informal interpersonal contact with Rozental. Following the December 7, 2017 email exchange, Rozental escalated her provocations of Plaintiff the following day, December 8th. This continued on Monday, December 11th when in retaliation Rozental attacked Plaintiff publicly.  Plaintiff responded that, "…you are mixing personal with professional…", to which Rozental declared she feels "very uncomfortable and degraded (as woman-manager)" and asked her friend Mira to forward this email exchange to Dr. Garofalo.  Plaintiff could no longer take this emotional aggression and fell sick.  Plaintiff informed Rozental it was due to "feeling mentally and physically exhausted"

28.  On December 14, 2017 Plaintiff sent Dr. Garofalo a formal complaint about improper behavior of his Manager, Rozental, including improper sexual advances and retaliation for his denials of those advances.  Dr. Garofalo is the Department Head and the Supervisor of Rozental.

29.  On December 20, 2017 Dr. Garofalo invited the HR Manager to meet with Plaintiff in his

RECEIVED NYSCEF: 07/29/2019

office to discuss the issue. The conversation was productive, but Plaintiff felt both Dr.

Garofalo and HR downplayed the seriousness of the situation he was reporting.

Nonetheless, Dr. Garofalo promised to resolve this issue, but ultimately did nothing; no

investigation into reported Plaintiff's allegations was conducted and no help was offered

for Plaintiff to secure a transfer. There is no evidence Garofalo ever talked to Rozental as

evidenced by Rozental's continued harassment of Plaintiff.

a.  Specifically during this meeting the HR Manager started the conversation. He asked

Plaintiff if he had a sexual relationship with Rozental to which he said, "No, never."

Dr. Garofalo then asked Plaintiff, "Is she making you uncomfortable?" Plaintiff

responded, "Yes" and told his story in full including the restaurants, outings,

birthday gifts/party invitations, the improper behavior and the retaliation he was

suffering from after rejecting Rozental's advances. They both asked Plaintiff

follow-up questions on who organized the parties and how the invitations came

from. Approximately fifteen to twenty minutes later, the HR person said he had

enough information and was about to leave. Both Garofalo and HR made it sound

like the meeting was over, but Plaintiff felt this meeting was unfinished, so he asked

Dr. Garofalo for one on one time, which he accepted. They spoke for another 15

minutes. Plaintiff told him that Rozental and he were born and raised in the same

city. Plaintiff provided other details, including how Rozental initiated several

provocative/inappropriate conversations with him; how he was suffering from her

public accusation campaign; and how she was using his teammates against him.

Plaintiff also requested a transfer to another team at this time. Garofalo said, "I

9

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

don't have anything available now, but we can always use a body somewhere."
Garofalo promised to talk to Rozental one-on-one and look into transfer options.
Plaintiff also said he himself would look into what's available on the company
career site and let him know. Garofalo asked Plaintiff to keep his complaint about
Rozental confidential.

30.     On January 3, 2018 Dr. Garofalo formally approved Plaintiff's transfer request,
specifically for the EPIC Reporting Coordinator position he found on the company
career site in the Data Sciences Department. At this time coworker John Bisset, began
watching and reporting Plaintiff's arrival and departure times to Rozental at her request.

31.     Plaintiff was also set up to fail by his supervisors. Specifically, on January 4, 2018, the
next day after January, 3rd transfer request approval Plaintiff was assigned a new task
without proper training or instructions with an unrealistic expectation to complete it in
three hours, although a formal deadline had been earlier set for the next morning. Later
that evening, at 10:37 pm, Bisset publicly humiliated Plaintiff on an email to the entire
team, which stated, "If we miss the date it will be because of you." Rozental escalated
the situation by forwarding the email to Garofalo, at midnight, repeating the same
unjustified charge. The next morning, Plaintiff addressed the incident professionally by
providing undisputed evidence of the staged set up, specifically by pointing out that
Plaintiff's average work speed for the same task was in fact 35 percent higher than
Bisset's and the three hour expectation was simply unreasonable. This documented
explanation was accepted by Garofalo, but no action was taken to stop the harassment.

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

32.   Continuing the following day Plaintiff looked for a suitable role with Defendant.  He

made six contacts with hiring managers over the next five months, first applying for

the EPIC Reporting job.  He exchanged emails with the IT recruiter for this position

for almost two months, just to find out that this position was never open in the first

place.  Plaintiff informed HR/Upper Management of this finding on February 28, 2018.

33.   From this time through March 6, 2018 Rozental retaliates with assistance of John

Bisset, a non-manager consultant who also reports to Rozental.  Bisset made baseless

false accusations; Rozental picked up and used them against Plaintiff, damaging his

personal and professional reputation, humiliating him publicly, making his teammates

feel resentful towards him because they're forced to believe he is seriously

underperforming. Plaintiff reports several serious issues with discriminatory treatment

on Rozental's side to HR and Dr. Garofalo and ask them to: a. intervene and b. expedite

his transfer. There is no reaction from either HR or Upper Management. Plaintiff also

requested a meeting with HR to report the harassment by Rozental and Bisset on

February 26, 2018 and sent a follow up email reporting "openly abusive" environment

on February 27th 2018.  A meeting with HR Manager occurred on February 28, 2018,

but no action was taken by HR and the harassment continued.  After another serious

public attack on March 8th 2018, Plaintiff openly and publicly opposed the retaliation

by Rozental and asked Dr. Garofalo to help him deal with this situation.  Plaintiff also

provided the management documented evidence the March 8th attack was unjustified.

An HR meeting is held on March 14, 2018 at which the HR Manager makes an attempt

to "reunite" the two sides, Rozental and Plaintiff.  However, HR fails to look into

11

Plaintiff's documented claims of professional misconduct/retaliation on Rozental's part. As a result, no meaningful solution is found. HR recommends Plaintiff's transfer. This transfer agreement is made public on March 15, 2018 but HR took no action to implement the transfer, which allowed Rozental, with the direct assistance of Bisset, to continue to harass Plaintiff. On 3/20/18, as he saw situation deteriorating, Plaintiff asked for a one on one meeting with Garofalo to expedite the transfer, but he got no response, thus Rozental was permitted to continue her harassment campaign. Garofalo never communicated with Plaintiff after that.

34.   Plaintiff, still under the supervision of Rozental is subjected to the following retaliation in an attempt to set him up for termination.

   a.  Rozental excludes Plaintiff from many meetings and work-related email communication;

   b.  Rozental singles Plaintiff out for unjustified criticism/blame, intense micromanagement;

   c.  Rozental rejects three vacation requests for 15, 11 and later even as short as 2 business days, even though another team member was allowed 20 vacation days under same conditions two months before;

   d.  Rozental doesn't approve Compensation time for the full hours Plaintiff worked as part of voluntary overtime, so he has to put fewer hours into his timesheets to get them signed;

   e.  Rozental humiliates Plaintiff publicly on regular basis to subdue/break him psychologically;

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

f.   Rozental plays a victim every time Plaintiff defends himself and asks her to investigate false claims;

g.   Rozental sends Plaintiff alone to perform Desktop Support (out of title) work for which he had no training or even properly written instructions available to him. No onsite Desktop supervision is offered;

h.   Rozental makes Plaintiff update/change timesheets at least 8 times immediately after March 14th HR meeting without any good reason and then tries to report this to HR/UM as a sign of "fraudulent irregularities on his time sheet". Eventually, the Timesheet Team confirms via email Plaintiff's version of time keeping is valid;

i.   Rozental sabotages Plaintiff's work with direct assistance of John Bisset. She assigns Bisset to act as an intermediary who never delivers his part of the product chain which directly affects Plaintiff's deliverables;

j.   Rozental ignores/rejects all written requests Plaintiff makes to professionally address the false allegations.

k.   Plaintiff was subject to baseless discipline on or about May 22, 2018, after his whereabouts in the evening were questioned by Rozental and he informed her that he had been out for a walk with his employment lawyer friend.

35.   Through June 2018 HR continues to not take any action regarding Plaintiff's complaints of harassment, and instead permits the preparation of fabricated charges against Plaintiff, resulting in an unpaid suspension and ultimately his termination.

36.   Rozental fabricates allegations regarding an absence during pre Go-Live Sundays, for which it was previously verbally agreed Plaintiff could work from home and for which

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

the written policy is that the overtime is not mandatory. Instead HR allows Rozental to discipline Plaintiff for this alleged "absence". Prior to April 2018 Plaintiff routinely worked on site over weekends when the opportunity arose. To fulfill his religious obligations Plaintiff was not able to physically report to the sites on three Post-Easter Sundays. In each instance, the same day Rozental emailed the notice of week-end work, Plaintiff promptly notified her that he would be available to work remotely and in each instance he did make himself available to work from home. Not once did Rozental respond and inform Plaintiff that onsite overtime was mandatory; nor was Plaintiff ever warned that he would be considered insubordinate/subject to potential discipline if he failed to report to the site on Sunday. Plaintiff was never contemporaneously reprimanded or written up for not working on-site on a Sunday.

37.  On May 21, 2018, Plaintiff has a conversation with another team member, Del at Sydenham Hospital, who confirmed that he had heard Bisset spreading false rumors about Plaintiff's performance among Hospital personnel.

38.  Plaintiff places two more written complaints of discrimination on May 24, 2018 with Garofalo but these complaints are ignored.

39.  Thereafter on June 12, 2018 Defendant suspended Plaintiff without pay, without charges, without explaining the reasons for the suspension and without giving him prior notice of the meeting or an opportunity to obtain union representation. Plaintiff is put on a one-month unpaid suspension and escorted out of the building in total humiliation by Garofalo. The management then permits and encourages false reporting, including submission of forged emails, from Rozental's direct reports and office friends never

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

properly investigating the allegations. Defendant serves Plaintiff with a set of dubious

charges two and a half months later.

40. Prior to his suspension Plaintiff was never counseled, written up, disciplined or warned

about potential disciplinary action.

41. Plaintiff's employment is terminated during his suspension.

42. The allegations of poor performance and misconduct were merely a pretext for

discrimination. Plaintiff was an exemplary employee who offered suggestions to

improve the work flow and quality, only to have his ideas rejected or ignored. He

performed his work promptly and in accordance with procedures and specifications

approved by his manager and adopted by the team.

43. As a direct and proximate result of Defendant's actions Plaintiff has suffered great and

irreparable harm including, depression, humiliation, pain and suffering, economic

damage and other foreseeable damages.

44. Plaintiff duly filed EEOC charges with the Equal Employment Opportunity

Commission.

45. Subsequently, the EEOC issued a notice of right to sue dated April 30, 2019.  This action

is commenced within ninety days of receipt of the notice of right to sue letter

conferring concurrent jurisdiction on this Court.

### AS AND FOR A FIRST CAUSE OF ACTION- NEW YORK STATE HUMAN RIGHTS LAW Hostile Work Environment- Sexual Harassment

46. Plaintiff repeats and realleges each and every allegation contained in paragraphs

numbered 1 through 45 as if fully set forth at length herein.

47.    As a result of the willful activities of Defendant, Plaintiff has been deprived of equal
       employment opportunities based upon a hostile work environment (sexual harassment),
       in violation of the New York State Human Rights Law, New York State Executive Law
       291 et. seq., which caused Plaintiff to suffer loss of income, pain and suffering, mental
       and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

### AS AND FOR A SECOND CAUSE OF ACTION-<br>NEW YORK STATE HUMAN RIGHTS LAW<br>"Quid Pro Quo" Sexual Harassment

48.    Plaintiff repeats and realleges each and every allegation contained in paragraphs
       numbered 1 through 47 as if fully set forth at length herein.

49.    Plaintiff's compensation, benefits, promotions and continued employment with
       Defendant was contingent on his participation in sexual acts.  Plaintiff's rejection of
       participation in sexual acts with his supervisor resulted in the denial of overtime and
       his termination.

50.    As a result of the willful activities of Defendant, Plaintiff has been deprived of equal
       employment opportunities based upon a quid pro quo sexual harassment in violation of
       the New York State Human Rights Law, New York State Executive Law 291 et. seq.,
       which caused Plaintiff to suffer loss of income, pain and suffering, mental and
       emotional harm, other non-pecuniary losses, and incur legal fees and costs.

### AS AND FOR A THIRD CAUSE OF ACTION-<br>NEW YORK STATE HUMAN RIGHTS LAW<br>Retaliation

51.    Plaintiff repeats and realleges each and every allegation contained in paragraphs
       numbered 1 through 50 as if fully set forth at length herein.

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

52.   Plaintiff engaged in protected activity by complaining of sexual harassment multiple times.

53.   Plaintiff was retaliated against as a result of his complaints of sexual harassment. Plaintiff's employment was terminated in retaliation for his protected activity.

54.   As a result of the willful activities of Defendant, Plaintiff has been deprived of equal employment opportunities based upon retaliation in violation of the New York State Human Rights Law, New York State Executive Law 291 et. seq., which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION-
## NEW YORK CITY HUMAN RIGHTS LAW
### Hostile Work Environment- Sexual Harassment

55.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 54 as if fully set forth at length herein.

56.   As a result of the willful activities of Defendant, Plaintiff has been deprived of equal employment opportunities based upon a hostile work environment (sexual harassment), in violation of the New York City Human Rights Law, Administrative Code §§ 8-101 et. Seq. (the Code), which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

## AS AND FOR A FIFTH CAUSE OF ACTION-
## NEW YORK CITY HUMAN RIGHTS LAW
### "Quid Pro Quo" Sexual Harassment

57.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 56 as if fully set forth at length herein.

17

NYSCEF DOC. NO. 1                                                                        RECEIVED NYSCEF: 07/29/2019

58.   Plaintiff's compensation, benefits, promotions and continued employment with Defendant was contingent on his participation in sexual acts.  Plaintiff's rejection of participation in sexual acts with his supervisor resulted in the denial of overtime and his termination.

59.   As a result of the willful activities of Defendant, Plaintiff has been deprived of equal employment opportunities based upon a quid pro quo sexual harassment in violation of the New York City Human Rights Law, Administrative Code §§ 8-101 et. Seq. (the Code), which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.\

### AS AND FOR A SIXTH CAUSE OF ACTION- NEW YORK CITY HUMAN RIGHTS LAW
#### Retaliation

60.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 59 as if fully set forth at length herein.

61.   Plaintiff engaged in protected activity by complaining of sexual harassment multiple times.

62.   Plaintiff was retaliated against as a result of his complaints of sexual harassment. Plaintiff's employment was terminated in retaliation for his protected activity.

63.   As a result of the willful activities of Defendant, Plaintiff has been deprived of equal employment opportunities based upon retaliation in in violation of the New York City Human Rights Law, Administrative Code §§ 8-101 et. Seq. (the Code), which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

### AS AND FOR A SEVENTH CAUSE OF ACTION-
### TITLE VII
### Hostile Work Environment- Sexual Harassment

64.  Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 63 as if fully set forth at length herein.

65.  Plaintiff duly filed EEOC charges with the Equal Employment Opportunity Commission. Subsequently, the EEOC issued a notice of right to sue dated April 30, 2019. This action is commenced within ninety days of receipt of the notice of right to sue letter conferring concurrent jurisdiction on this Court.

66.  Plaintiff has been deprived of equal employment opportunities in violation of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq. as amended denying plaintiff equal terms, conditions and privileges of employment and subjecting Plaintiff to a hostile work environment by reason of male gender- sexual harassment (male) which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

### AS AND FOR AN EIGHTH CAUSE OF ACTION-
### TITLE VII
### "Quid Pro Quo" Sexual Harassment

67.  Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 66 as if fully set forth at length herein.

68.  Plaintiff's compensation, benefits, promotions and continued employment with Defendant was contingent on his participation in sexual acts. Plaintiff's rejection of participation in sexual acts with his supervisor resulted in the denial of overtime and his termination.

19

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

69.   Plaintiff has been deprived of equal employment opportunities in violation of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq. as amended denying plaintiff equal terms, conditions and privileges of employment and subjecting Plaintiff to quid pro quo sexual harassment which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

## AS AND FOR A NINTH CAUSE OF ACTION-
### TITLE VII
### Retaliation

70.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 69 as if fully set forth at length herein.

71.   Plaintiff engaged in protected activity by complaining of sexual harassment multiple times.

72.   Plaintiff was retaliated against as a result of his complaints of sexual harassment. Plaintiff's employment was terminated in retaliation for his protected activity.

73.   Plaintiff has been deprived of equal employment opportunities in violation of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq. as amended denying plaintiff equal terms, conditions and privileges of employment and subjecting Plaintiff to retaliation which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

## AS AND FOR A TENTH CAUSE OF ACTION-
### NEW YORK CITY HUMAN RIGHTS LAW
### Religious Discrimination

74.   Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered 1 through 73 as if fully set forth at length herein.

20

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

75.    As a result of the willful activities of Defendant, Plaintiff has been deprived of equal employment opportunities based upon religious discrimination in that he was disciplined for not working on site on select Sundays, despite requesting to work from home due to religious observance n violation of the New York City Human Rights Law, Administrative Code §§ 8-101 et. Seq. (the Code), which caused Plaintiff to suffer loss of income, pain and suffering, mental and emotional harm, other non-pecuniary losses, and incur legal fees and costs.

WHEREFORE, Plaintiff prays that judgment be entered that exceeds the minimum jurisdiction of this Court as follows:

1.    Reinstatement;

2.    Granting compensatory damages including but not limited to back pay for the insidious practice of retaliation according to proof;

2.    Granting compensatory damages for injuries and accompanying pain and suffering for sexual harassment and retaliation;

3.    Attorneys fees, costs and disbursements;

4.    Any other relief that is just and equitable.

**PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY**

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

Dated: New York, New York
      July 23, 2019

Respectfully submitted,

STEWART LEE KARLIN
LAW GROUP, PC

/s/Stewart Lee Karlin
STEWART LEE KARLIN, ESQ.
DANIEL E. DUGAN, ESQ.
Attorney for Plaintiff
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670

22

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

## VERIFICATION

STATE OF NEW YORK   )

COUNTY OF NEW YORK)   ss.:

I, the undersigned, an attorney admitted to practice in law in the Courts of New York State, state that I am the attorney of record for the Plaintiff in the within action;  I have read the foregoing, Complaint, and know the contents thereof; the same is true to my own knowledge except as to those matters therein alleged to be on information and belief, as to those matters I believe to be true.

The reason this verification is made by your affirmant and not by the Plaintiff herein is that said Plaintiff resides in a county other than the county where your affirmant maintains his law office.

The grounds of your affirmant's belief as to all matter not stated upon my own knowledge are as follows:

Conversations with the Plaintiff and information contained in the file.

Dated:  New York, New York
        July 23, 2019

                           /s/Stewart Lee Karlin
                           STEWART LEE KARLIN, ESQ.

23

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/29/2019

## ATTORNEY CERTIFICATION

Pursuant to 22 NYCRR, Section 130-1.1.A the undersigned, an attorney duly admitted to practice law in the Courts of the State of New York, respectfully affirms the truth of the following statement under the penalties of perjury pursuant to the C.P.L.R.:

The undersigned attorney hereby certifies that to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers (s) or the contents therein are not frivolous as defined in Subsection C of Section 130-1.1.

Dated: New York, New York
July 23, 2019

/s/Stewart Lee Karlin
STEWART LEE KARLIN, ESQ.